UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
   CLAUDIA GAYLE, et al.,

                               Plaintiffs,

                 -against-

   HARRY'S NURSES REGISTRY, INC. and
   HARRY DORVILIER a/k/a HARRY DORVILIEN,

                               Defendants.
----------------------------------------------------------------X

**MEMORANDUM
& ORDER**

**07-CV-4672 (NGG) (MDG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs, nurses who were employed by Defendant Harry's Nurse Registry, Inc. ("Harry's Nurses"), bring this action for overtime pay and liquidated damages under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19. ("FLSA"). (Complaint (Docket Entry # 1).) Plaintiffs move for summary judgment with respect to damages. (Docket Entry # 107.) Harry's Nurses and its principal, Defendant Harry Dorvilier ("Dorvilier") (collectively, "Defendants") cross-move (Docket Entry # 113) for reconsideration of Judge Charles P. Sifton's determination that Plaintiff Claudia Gayle ("Gayle") was entitled to partial summary judgment on the question of liability. As set forth below, the court finds that Gayle is entitled to summary judgment with respect to damages, but that summary judgment for the remaining Plaintiffs is not appropriate at this time. Defendants' motion for reconsideration is denied.

## I.    FACTUAL BACKGROUND[1]

Harry's Nurses is a corporation with its principal place of business in Queens, New York. (Liability Decision at 2.) Dorvilier is Harry's Nurses' president and chief executive officer. (Id.)

---

[1] This abbreviated statement of the facts is drawn from portions of Judge Sifton's order ("Liability Decision" (Docket Entry # 53)) that are not in dispute.

1

Harry's Nurses refers temporary healthcare personnel, including Registered Nurses ("RNs") and Licensed Practical Nurses ("LPNs") (collectively, "field nurses"), to patients in their private homes in and around New York City. (Id.)

Harry's Nurses maintains a referral list or "registry" of field nurses. (Id. at 3.) At any given time, Harry's Nurses may have as many as five hundred field nurses on its referral list. (Id.) Harry's Nurses screens and selects nurses before placing them on the referral list. (Id.) Harry's Nurses also has between seven and ten full-time employees who are responsible for company administration and supervision. (Id. at 3.)

Gayle, who is an RN, entered into a "Memorandum of Agreement" with Harry's Nurses on February 20, 2007. (Id. at 8.) In doing so, she agreed to retain Harry's Nurses to coordinate placement opportunities. (Id.) The Memorandum of Agreement purported to classify Gayle as an "independent contractor." (Id. at 8-9.) Gayle's relationship with Harry's Nurses lasted for nine months, ending in November 2007. (Id. at 8.) Plaintiff regularly worked in excess of forty hours a week on assignments she received through Harry's Nurses and did not receive overtime premium pay for her excess hours. (Id. at 9.)

## II. PROCEDURAL HISTORY

Gayle filed this action, on behalf of herself and others similarly situated, on November 7, 2007. (See Complaint (Docket Entry # 1).) Defendants filed an answer on January 22, 2008. (Answer (Docket Entry # 10).) In their Answer, Defendants asserted, as an affirmative defense, that Gayle was properly compensated as an independent contractor. (Id. at 6.) Defendants did not assert that Gayle, or other nurses affiliated with Harry's Nurses, were otherwise exempt from the FLSA.

2

By stipulation dated January 31, 2008, the parties agreed that they would first conduct discovery "bearing upon plaintiff's status as an employee or an independent contractor" and that, if Defendants' anticipated summary judgment motion on that basis was denied, the parties would then conduct discovery "as to the merits of plaintiff's claims." (Docket Entry # 16.) By letter dated June 13, 2008, the parties advised Judge Sifton that Defendants were prepared to move for summary judgment on "the threshold issue of whether the Plaintiff had been properly classified as an independent contractor," and that Gayle was "similarly prepared to move for class certification and/or to authorize notice to similarly situated persons of one collective action." (See Docket Entry # 18.) Judge Sifton so-ordered the parties' proposed briefing schedule. (Id.)

On August 13, 2008, Gayle filed a memorandum of law, as envisioned by the schedule the parties proposed. (Docket Entry # 32.) In addition to arguing against a grant of summary judgment in Defendants' favor, and moving for notice to potential class members, Gayle also cross-moved for summary judgment on the issue of liability. (See id. at 27.) It does not appear that Gayle previously sought – or was granted – permission to make a motion for summary judgment.

Nonetheless, on March 9, 2009, Judge Sifton denied Defendants' motion for summary judgment and granted Gayle's motion for partial summary judgment as to liability. (Liability Decision.) Specifically, Judge Sifton concluded that there was no genuine issue of material fact as to Gayle's employment status and that Harry's Nurses was Gayle's employer under the FLSA. (Id. at 23.) Because the parties did not dispute that Gayle was not paid overtime wages when she worked more than forty hours in one week, Judge Sifton found that Gayle was entitled to summary judgment on the question of liability. (Id.) Judge Sifton also found that Harry's Nurses and Dorvilier were jointly and severally liable to Gayle. (Id. at 23.) Finally, Judge Sifton

3

concluded that Gayle had made the "modest factual showing needed to support a preliminary determination that there are others similarly situated who should be notified of their opportunity to join this suit as plaintiffs." (Id. at 27.) Judge Sifton further noted that "[t]his is a preliminary determination that may be revised upon the completion of discovery." (Id. at 28.) Following Judge Sifton's order, approximately 55 other Plaintiffs opted into this action.

On August 18, 2009, Defendants – then between their second and third set of lawyers – filed a *pro se* motion to renew and reargue Judge Sifton's prior order.[2] (Docket Entry # 82.) On August 19, 2009, Dorvilier agreed to withdraw that motion. (Docket Entry # 81.) The case was re-assigned to this court on November 24, 2009.

The court held a pre-motion conference on June 23, 2010. (See Docket Entry # 99.) Counsel for Defendants failed to appear at that conference. (Id.) The court nonetheless set a briefing schedule for Plaintiffs' anticipated motion for summary judgment regarding damages. (Id.) On July 21, 2010, Defendants served Plaintiffs with a "Memorandum in Opposition to Plaintiff's Motion for Summary Judgment." (Docket Entry # 113.) Despite the title of that submission, it did not address Plaintiffs' arguments regarding an award of damages. Instead, Defendants' submission was, in substance, a motion for reconsideration of the Liability Decision.

At a conference on August 9, 2010, Defendants reiterated their desire for reconsideration of the Liability Decision and further stated that their arguments in support of reconsideration were fully set forth in their previous submission. (See Docket Entry # 116.) With the consent of the parties, the court converted Defendants' opposition into a motion for reconsideration. (Id.) Plaintiffs indicated that their arguments in opposition to that motion were fully set forth in their

---

[2] Defendants' changes in representation and delays in complying with discovery orders have undoubtedly prolonged and complicated the final resolution of this case.

4

reply (Docket Entry # 115). (Id.) Accordingly, the court ordered Defendants to file a sur-reply regarding their motion for reconsideration. (Id.)

Defendants filed a sur-reply on August 29, 2010. The sur-reply consisted of an (1) an attorney affirmation, with attached exhibits (Docket Entry # 121); (2) a memorandum of law (Docket Entry # 122), and (3) a "Rule 56.1 Statement" (Docket Entry # 123) that did not contain any citations to evidence, in violation of Local Civil Rule 56.1. Plaintiff moved to strike various portions of the sur-reply on the grounds that they were procedurally improper. (See Docket Entry # 124.) Plaintiffs also explained why they believed that the substance of the sur-reply was without merit. (Id.)

## III. APPROPRIATENESS OF RECONSIDERATION

### A. Standard for Reconsideration

Defendants rely on Federal Rule of Civil Procedure 60(b) as the basis for their motion for reconsideration. (See Def. Sur-Reply (Docket Entry # 122) at 8.) Specifically, Defendants argue that the court should revisit Judge Sifton's Liability Decision under Rule 60(b)(1), which covers situations of "mistake, inadvertence, surprise, or excusable neglect," and Rule 60(b)(6), a catch-all provision that covers "any other reason justifying relief." (Id.)

As a general matter, reconsideration is an exceptional remedy and "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995). The moving party must also demonstrate that any available factual matters or controlling precedent "were presented to [the court] on the underlying motion." In re N.Y. Cmty. Bancorp, Inc. Sec. Litig., No. 04-CV-4165 (ADS), 2007 U.S. Dist. LEXIS 47405, at *7 (E.D.N.Y. 2007). Moreover,

"Rule 60(b) is no substitute for an appeal." Martin v. Chemical Bank, 940 F. Supp. 56, 59 (S.D.N.Y. 1996).

A motion under Rule 60(b)(1) must be made within a year of the challenged order. See Fed. R. Civ. P. 60(c)(1). Relief under Rule 60(b)(6) is not subject to a specified time limit, but its applicability is even more narrow than Rule 60(b)(1), and it "is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986).

The Second Circuit has explained that it "*very* rarely grants relief under Rule 60(b)(6) for cases of alleged attorney failure or misconduct." Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004) (emphasis in original). To constitute "extraordinary circumstances" under Rule 60(b)(6), a lawyer's failures must be "so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance or constructive disappearance." Id. (internal citations omitted).

**B.    Reconsideration is Not Warranted**

Defendants' arguments in favor of reconsideration are barely coherent, and in many instances are internally contradictory. For example, even as Defendants argue that reconsideration is appropriate, they state that "there are no extraordinary circumstances justifying relief from judgment." (Def. Sur-Reply at 13.) So far as the court can understand, Defendants' primary argument for reconsideration is that they were unable to make certain legal arguments to Judge Sifton because of conflicts with their previous counsel. Defendants state:

> In the matter at hand, it could be claimed that there were differences between defendants and his prior attorney. There were enough of differences that made the Defendants' prior attorneys office make a motion to withdraw as counsel for the defendants herein, then withdrawn said motion and then make said motion anew.

6

> Said problems between the defendants and the prior attorneys, office may have caused such an circumstance to prevent the prior attorneys' office from making the motion to renew in a timely fashion.

(Def. Sur-Reply at 14-15.)

There is, however, no actual evidence that Defendants fired their first two sets of attorneys because their attorneys refused to advance certain arguments. Indeed, the record suggests otherwise. Defendants' previous lawyers both sought permission from the court to withdraw from their representation. (See Docket Entry ## 36, 61, 71.) Defendants' first lawyer withdrew before briefing on the parties' initial motions was even complete. He simply stated that "circumstances have arisen which will make it impossible for this firm to effectively represent the Defendants." (Docket Entry # 36 at 2.) Counsel also indicated that he had informed Defendants of his decision. (Id. at 3.)

Defendants' second lawyer detailed the difficulty of dealing with Defendants due to Dorvilier's refusal to comply with discovery orders and to return counsel's calls. (Docket Entry # 71 ¶¶ 6-9.) He also cited Dorvilier's efforts "to make *ex parte* contact with Magistrate Go regarding the merits of this case without [his] knowledge or consent." (Id. at 10.) Thus, there is no basis for inferring that prior counsel withdrew because they were unwilling to advance certain arguments, or that Defendants were otherwise prevented from making any arguments to Judge Sifton.

Because Defendants' motion for reconsideration comes well over a year after the Liability Decision, it is untimely under Rule 60(b)(1). Defendants' unsupported claims of conflicts involving their former attorneys do not even approach the showing of "extraordinary circumstances" required under Rule 60(b)(6). Further, reconsideration is not appropriate because all of the arguments and evidence that Defendants now wish to submit was available to them at

the time of the Liability Decision. Finally, none of Defendants' substantive arguments undermine Judge Sifton's analysis. Thus, for a multitude of reasons, Defendants' motion for reconsideration must be denied.

## III. SUMMARY JUDGMENT

### A. Standard for Summary Judgment

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. A grant of summary judgment is proper "when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. Appropriateness of Summary Judgment for Opt-In Plaintiffs

Plaintiffs seek an award of summary judgment of damages to Gayle and to fifty-five other individuals who have opted into this case. (Pl. Mem. (Docket Entry # 111) at 5.) Plaintiffs assert that, in light of the Liability Decision, "the calculation of damages is a matter of arithmetic." (Id.) As explained below, however, the court finds that summary judgment on damages is appropriate for Gayle, but not for the other Plaintiffs.

At the time of the Liability Decision, Gayle was the only Plaintiff in this action. Accordingly, the parties' discovery and motion practice was targeted to the question of whether Gayle was an employee or an independent contractor. (See, e.g., Docket Entry ## 16, 18.) Although some of Judge Sifton's conclusions about the legal implications of Defendants' business model were framed broadly, Judge Sifton only awarded summary judgment on liability to Gayle. (See Liability Decision at 23.)

Judge Sifton never concluded that all of the individuals who subsequently opted into this action would be entitled to summary judgment on liability, nor could he reasonably have done so. To the contrary, Judge Sifton only made a "preliminary determination" that there might be other similarly situated individuals, and expressly stated that his determination might be revised once discovery was complete. (Id.) Accordingly, there have been no liability findings with respect to Plaintiffs other than Gayle.

Moreover, Plaintiffs have not submitted any evidence regarding the identities of the individuals who have opted into this action, or the extent to which they are similarly situated to Gayle. Plaintiffs did provide a statement in accordance with Local Civil Rule 56.1 in connection with their instant motion. (Docket Entry # 110.) It comprises fifty-seven numbered paragraphs, the first fifty-six of which consist solely of the name of an individual plaintiff, his or her

9

effective opt-in date, and the amount of unpaid overtime premium pay that Plaintiffs assert that individual is owed. For example, paragraph 2 states, "Sulaiman Ali-El opted into this action on May 8, 2009. His effective opt-in date is March 27, 2006. He is entitled to $7,105.95 in unpaid overtime premium pay." (Pl. Rule 56.1 Statement ¶ 2 (internal citations omitted).) Plaintiffs simply have failed to meet their burden of demonstrating the absence of a material fact regarding Defendants' liability to the opt-in Plaintiffs.[3] Accordingly, Plaintiffs are not entitled to summary judgment regarding damages for those individuals.

The court is mindful that Plaintiffs have been waiting for some time for the resolution of this case, and that the vast majority of delays are attributable to Defendants' conduct. It is also entirely possible that – because Judge Sifton's conclusions are the law of the case – there is very little that the court still needs to address prior to finally resolving Plaintiffs' claims. Accordingly, the court will hold a status conference as soon as possible to formulate a streamlined way to resolve the remaining issues.

### C. Appropriateness of Summary Judgment for Gayle

Summary judgment on damages is, however, appropriate with respect to Gayle. The FLSA requires covered employers to pay non-exempt employees 1.5 times the regular rate of pay for all hours worked in excess of forty hours for any given workweek. 29 U.S.C. § 207(a)(1). Plaintiffs have submitted Gayle's time and pay records. (See Aff. of Jonathan Bernstein (Docket Entry # 110), Ex. 3.) Those records show that Gayle is owed $7,390 in unpaid overtime. (See Pl. 56.1 (Docket Entry #110) ¶ 1.) Defendants do not challenge these

---

[3] It is somewhat mystifying that Defendants failed to argue that summary judgment as to damages was inappropriate in the absence of liability findings and chose instead to pursue a misguided and baseless motion for reconsideration. If additional liability findings are somehow *not* required in collective actions under the FLSA – and it is hard to imagine why that might be – Plaintiffs have not provided relevant authority in support of that proposition, nor is the court aware of any.

calculations in any way or dispute the accuracy of the records on which they are based. Accordingly, Gayle is entitled to summary judgment regarding her unpaid overtime.

## D. Liquidated Damages

An employer who violates the compensation provisions of the FLSA is liable for unpaid wages "and an additional equal amount as liquidated damages." 29 U.S.C. § 216(c). Liquidated damages under the FLSA are presumed in every case where violation of the statute is found. 29 U.S.C. § 260. The presumption may be overcome if an employer proves, as an affirmative defense, both that it acted in good faith and that it had objectively reasonable grounds for believing that its conduct did not violate the FLSA. Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987). That burden "is a difficult one to meet" and "double damages are the norm, single damages the exception." Id.

To establish good faith, a defendant must produce "plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it." Wilamowsky, 833 F.2d at 19. "Good faith requires more than ignorance of the prevailing law or uncertainty about its development." Reich v. S. New Eng. Telcoms. Corp., 121 F.3d 58, 71 (2d Cir. 1997). An employer must "first take active steps to ascertain the dictates of the FLSA and then act[] to comply with them." Id.

Defendants have not demonstrated good faith sufficient to overcome the presumption in favor of liquidated damages. Indeed, they essentially ignore the issue of good faith altogether. Even if this were not the case, it appears that Defendants would be hard-pressed to demonstrate good faith. There is no evidence in the record that would have supported a reasonable belief on Defendants' part that Gayle was not covered by the FLSA. Defendants appear to have continued not to properly compensate nurses for overtime *after* Judge Sifton's decision. (See Aff. of

Jonathan Bernstein, Ex. 3.) Consequently, Gayle is entitled to summary judgment on Defendants' affirmative defense of good faith and is entitled to $7,390 in liquidated damages.

## IV. CONCLUSION

Defendants' motion for reconsideration is DENIED. Plaintiffs' motion for summary judgment is GRANTED with respect to Gayle and DENIED without prejudice with respect to the remaining Plaintiffs. Gayle is awarded $7,390 in unpaid overtime and the same amount as liquidated damages, for a total of $14,780. Defendants shall be jointly and severally liable for those damages.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
December 23, 2010

NICHOLAS G. GARAUFIS
United States District Judge