

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CLAUDIA GAYLE, et al.,

                    Plaintiffs,

      -against-

HARRY'S NURSES REGISTRY, INC. and
HARRY DORVILIER *a/k/a HARRY DORVILIEN*,

                  Defendants.

------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**07-CV-4672 (NGG) (MDG)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ MAR 0 2 2012 ★

**BROOKLYN OFFICE**

       Plaintiffs, nurses who were employed by Defendant Harry's Nurses Registry, Inc.

("Harry's Nurses"), bring this action for overtime pay under the Fair Labor Standards Act, 29

U.S.C. §§ 201-19 ("FLSA"). (Compl. (Docket Entry # 1).) Plaintiffs move for certification of a

collective action under 29 U.S.C. § 216(b), summary judgment under Federal Rule of Civil

Procedure 56, and to enforce sanctions against Defendants. (Docket Entry # 135.) Defendants

oppose Plaintiffs' motion and cross-move to strike it. (Docket Entry ## 148, 158.) As set forth

below, the court grants Plaintiffs' motion for certification of a collective action, for summary

judgment as to liability, and to enforce sanctions. Defendants' motion to strike is denied.

**I.     BACKGROUND[1]**

       Defendant Harry's Nurses is a corporation with its principal place of business in Queens,

New York. (Liability Decision (Docket Entry # 53) at 2.) Defendant Harry Dorvilier is Harry's

Nurses' President and Chief Executive Officer. (Id.) Harry's Nurses refers temporary healthcare

---

[1] This abbreviated statement of facts is drawn from portions of Judge Charles P. Sifton's Order of March 9, 2009
(Docket Entry # 53) ("Liability Decision"), and this court's Order of December 30, 2010 (Docket Entry # 127)
("Damages Decision"). These findings of fact are the law of the case and are not in dispute. In its discussion of
Plaintiffs' motion for summary judgment in Part II.C, infra, the court articulates additional undisputed facts upon
which it relies.

personnel, including registered nurses and licensed practical nurses (collectively, "field nurses"), to work in patients' private homes in and around New York City.  (Id.)

Harry's Nurses maintains a referral list or "registry" of field nurses.  (Id. at 3.)  At any given time, Harry's Nurses may have as many as five hundred field nurses on its referral list. (Id.)  Harry's Nurses screens and selects nurses before placing them on a referral list.  (Id.) Harry's Nurses also has between seven and ten fulltime employees who are responsible for company administration and supervision.  (Id.)

Field nurses have no contractual or economic relationship with patients to whom they are referred.  (Id. at 4.)  A nursing supervisor observes and assesses field nurses' skills and phones the patients at least once per day to verify that the assigned nurse has reported for duty.  (Id.) Field nurses submit progress notes and time sheets to the nursing supervisor.  (Id. at 6.)

All field nurses enter into a "Memorandum of Agreement" with Harry's Nurses as part of Harry's Nurses' procedures.  (Id. at 8; see also Samedi Aff. (Docket Entry # 140); Ledain Aff. (Docket Entry # 137); Y. Robinson Aff. (Docket Entry # 139); Sankar Aff. (Docket Entry # 141); P. Robinson Aff. (Docket Entry # 138) (collectively, "Plaintiffs' Affidavits").)[2]  By entering into this Agreement, field nurses agree to retain Harry's Nurses to coordinate placement opportunities.  (Liability Decision at 8; see also Plaintiffs' Affidavits.)

On November 7, 2007, Plaintiff Claudia Gayle filed this action, on behalf of herself and others similarly situated, against Harry's Nurses and Dorvilier, alleging that she regularly worked in excess of forty hours a week on assignments she received through Harry's Nurses and

---

[2] These affidavits were submitted with Plaintiffs' instant motion for summary judgment.  Defendants do not dispute the facts alleged in the affidavits.

did not receive overtime premium pay for her excess hours, in violation of the FLSA.[3] (See Compl. ¶¶ 22-24.) On July 9, 2008, Defendants moved for summary judgment as to Gayle. (Docket Entry # 19.) On August 13, 2008, Gayle cross-moved for summary judgment on the issue of liability and to authorize notice to potential class members of a FLSA collective action. (Docket Entry # 27.)

On March 9, 2009, Judge Sifton denied Defendants' motion for summary judgment and granted Gayle's motion for partial summary judgment as to liability. (See Liability Decision.) Judge Sifton found that there was no genuine issue of material fact as to Gayle's status as an "employee" under FLSA, and that Gayle indisputably was not paid overtime wages when she worked more than forty hours in one week. (Id. at 23.) He also found that Harry's Nurses and Dorvilier were jointly and severally liable to Gayle. (Id.) Finally, Judge Sifton conditionally certified a class under the FLSA after concluding that Gayle had made the "modest factual showing needed to support a preliminary determination that there [we]re others similarly situated who should be notified of their opportunity to join this suit as plaintiffs." (Id. at 27-28 (noting that "[t]his is a preliminary determination that may be revised upon the completion of discovery").)[4] Subsequently, fifty-five other Plaintiffs opted into this action. (Docket Entry ## 55-59, 62, 66-73, 79-80, 85, 88-89.)

The case was reassigned to this court on November 24, 2009. Plaintiffs filed a motion for summary judgment as to damages on June 25, 2010. (Docket Entry # 107.) On July 21, 2010, Defendants served Plaintiffs with a "Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment." (Docket Entry # 113.) Despite its title, Defendants' submission did not

---

[3] A fuller account of the procedural history of this case appears in the Damages Decision. (See Damages Decision at 2-5.)

[4] As will be discussed below, certification of a FLSA collective action proceeds in two stages: one in the early stages of the litigation and one after discovery is complete. (See Part II.B., infra.)

address Plaintiffs' arguments regarding an award of damages. (See id.) Instead, Defendants'

submission was, in substance, a motion for reconsideration of the Liability Decision. (See id.)

With the consent of the parties, the court converted Defendants' opposition into a motion for

reconsideration. (See Order of Aug. 10, 2010 (Docket Entry # 116).)

On December 23, 2010, the court issued its Damages Decision. The court denied

Defendants' motion for reconsideration. (Damages Decision at 5-8.) The court granted

Plaintiffs' motion for summary judgment on damages with respect to Gayle and awarded her

$14,780. (Id. at 11-12.) But the court denied Plaintiffs' motion for summary judgment on

damages as to the opt-in Plaintiffs, reasoning that Judge Sifton had "never concluded that all of

the individuals who subsequently opted into this action would be entitled to summary judgment

on liability." (Id. at 9-10.)

Defendants appealed the Damages Decision to the United States Court of Appeals for the

Second Circuit. (Notice of Appeal (Docket Entry # 128).) The Second Circuit dismissed the

appeal on the grounds that it lacked jurisdiction because there was no final order issued by this

court. (Mandate of USCA (Docket Entry # 160).)

On April 15, 2011, Plaintiffs submitted the instant motion for certification of a collective

action, summary judgment, and to enforce sanctions. (Docket Entry # 135.) On June 21, 2011,

Defendants filed a motion to strike Plaintiffs' motion, arguing that Plaintiffs had failed to comply

with Local Rule 56.2 of the United States District Court for the Eastern District of New York,

which governs the provision of notice to pro se litigants; Defendants requested that their motion

be considered together with Plaintiffs'. (Docket Entry # 158.)

4

## I.    DISCUSSION

### A.    Defendants' Motion to Strike

Defendants assert that the court should deny Plaintiffs' motion without prejudice because Plaintiffs failed to comply with Local Rule 56.2.[5] For the reasons that follow, Defendants' motion is denied.

Under Local Rule 56.2, "any represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, a Notice To Pro Se Litigant Opposing Motion For Summary Judgment." The purpose of this rule is to ensure that a party acting pro se "understands its burden in responding to a motion for summary judgment, and the consequences of failing to do so." Hartford Life Ins. Co. v. Einhorn, 452 F. Supp. 2d 126, 129 (E.D.N.Y. 2006). "The failure to include a Rule 56.2 Statement with a motion for summary judgment is grounds for the denial of the motion *if* it is not otherwise clear from the record that the *pro se* litigant understood the nature of the summary judgment motion." Id. (first italics added) (citing Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999); M.B. # 11072-054 v. Reish, 119 F.3d 230, 232 (2d Cir. 1997)); see also Forsyth v. Fed. Empl. & Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005) (where "plaintiff's opposition papers . . . indicated that he understood his responsibilities under Rule 56 . . . , neither the district court nor defendants were required to provide plaintiff with notice under Rule 56.2"), abrogated on other grounds by Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2009); Venable v. Reed Elsevier, Inc., No. 04-CV-3532, 2009 WL 2516844, at *2 (S.D.N.Y. Aug. 17, 2009) (failure to serve Rule 56.2 notice was "harmless" where plaintiff

---

[5] Defendants also argue that Plaintiffs failed to serve Defendants with a statement of material facts as required by Local Rule 56.1. (Def. Mot. to Strike at 1.) They are incorrect. As the record indicates, Plaintiffs did properly file their Rule 56.1 statement with the court and served it on Defendants. (See Pl. R. 56.1 Statement (Docket Entry # 143) (cc-ing Defendants); Bernstein Ltr. of Apr. 15, 2011 (Docket Entry # 159, Ex. A).)

had "demonstrated her knowledge of all obligations and consequences stemming from the
Defendant's motion for summary judgment").

Although Dorvilier was proceeding pro se at the time Plaintiffs filed their instant motion,[6]
Plaintiffs' failure to include a Rule 56.2 statement with their motion is not grounds for denial of
the motion because it is clear from the record that Defendants understood the nature of the
motion at the time they filed their opposition papers. On May 10, 2011—after Plaintiffs filed
their motion but before Defendants filed their opposition papers—Defendants retained attorney
Bernard Alter. (Def. Mot. to Strike at 1.) Alter prepared and filed Defendants' opposition on his
clients' behalf, which was timely and addressed all of the substantive issues raised by Plaintiffs'
motion. (Docket Entry # 148.) Moreover, even before Dorvilier retained counsel, Dorvilier
appeared in person before this court and the court explained the nature and import of the instant
motion to him. (See Docket Entry of Feb. 23, 2011.) Indeed, Defendants do not argue that they
did not understand the nature of Plaintiffs' motion; they argue only that a Local Rule 56.2
Statement "would have heightened defendants to the nature of the motion and caused the
defendants to move quickly to protect their rights." (Def. Mot. to Strike at 3.) Local Rule 56.2
does not require this kind of "heightened" notice.

In sum, because Defendants were informed by this court of the nature of Plaintiffs'
motion, and then filed timely and detailed opposition papers with the assistance of counsel, it is
"clear from the record that [they] understood the nature of the summary judgment motion."
Hartford, 452 F. Supp. 2d at 129. Accordingly, Plaintiffs' failure to provide a Local Rule 56.2

---

[6] Over the course of this litigation, Dorvilier has retained and terminated the services of several different attorneys,
and has at times purported to be directing this litigation on behalf of himself and Harry's Nurses. At the time
Plaintiffs filed their instant motion, Dorvilier was acting pro se after having once again requested that his attorney be
relieved. (See Schirtzer Ltr. of Feb. 17, 2011 (Docket Entry # 129); Docket Entry of Feb. 23, 2011.) But as the
court has repeatedly instructed Dorvilier, despite his interest in Harry's Nurses, there are *two* separate Defendants in
this case—Dorvilier and Harry's Nurses—and Harry's Nurses, as a corporate party, cannot act pro se. See Grace v.
Bank Leumi Trust Co., 443 F.3d 180, 192 (2d Cir. 2006). At the pre-motion conference in advance of Plaintiffs'
instant motion, the court again reminded Dorvilier of this rule. (See Docket Entry of Feb. 23, 2011.)

6

statement does not mandate dismissal of their motion, and Defendants' motion to strike is denied. See Forsyth, 409 F.3d at 572; Venable, 2009 WL 2516844, at *2.

**B.    Plaintiffs' Motion for Certification of a Collective Action**

Plaintiffs move for second-stage class certification of Gayle and fifty-five other individuals who have opted into this case. For the reasons that follow, the motion is granted.

Courts follow a two-stage process to determine whether a matter should proceed as a FLSA collective action under 29 U.S.C. § 216(b). Ayers v. SGS Control Servs., Inc., No. 03-CV-9077, 2007 WL 646326, at *4 (S.D.N.Y. Feb. 27, 2007).  In the first stage, which typically occurs early in the litigation, the named plaintiffs bear the "minimal" burden of proof to show that there are other employees who are similarly situated to them.  Id. (quoting Torres v. Gristede's Operating Corp., No. 04-CV-3316, 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006)); see also Prizmic v. Armour, Inc., No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. 2006).  "If the court finds that they are similarly situated, it may conditionally certify the class and authorize notice to be sent to putative class members."  Prizmic, 2006 WL 1662614, at *2. As discussed above, prior to the end of discovery in this action, Judge Sifton ruled that Plaintiff Gayle had met the modest factual showing needed to support a first-stage determination— revisable upon completion of discovery—that there were other individuals who were similarly situated to Gayle and who should be notified of their opportunity to join this suit as Plaintiffs. (Liability Decision at 27-28.)

The second stage of the certification inquiry occurs after discovery closes.  See Ayers, 2007 WL 646326, at *4.  At the second stage, the court must determine whether the class should be decertified or continue to trial as a collective action.  See Prizmic, 2006 WL 1662614, at *2. Second-stage certification requires the court to exercise "a more heightened scrutiny" in

7

determining whether the potential plaintiffs are similarly situated. Jacobs v. NY Foundling Hosp., 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007). Still, even at this stage, Plaintiffs may support their claims through "generalized proof" and "need show only that their positions are similar, not identical." Ayers, 2007 WL 646326, at *5.

Plaintiffs argue that they satisfy the heightened scrutiny necessary for second-stage class certification. (Pl. Mem. (Docket Entry # 144) at 13-18.) Defendants make three arguments in opposition: (1) that a determination of second-stage class certification is premature because discovery is incomplete; (2) that Plaintiffs cannot obtain class certification because they have failed to present affidavits from all of the opt-in Plaintiffs; and (3) that opt-in Plaintiffs are not similarly situated to Plaintiff Gayle. (Def. Opp. at 5-13.) The court will address each of these arguments in turn.

> 1.    Timing of Motion

Defendants argue that discovery is incomplete—and certification is premature—because they have not had the opportunity to depose any opt-in Plaintiffs or subpoena all relevant documents. (Id. at 6.) They are incorrect. Magistrate Judge Marilyn D. Go supervised discovery in this matter. On March 29, 2010, Judge Go issued an Order stating that "[d]iscovery is completed" with the exception of "*defendants'* failure to produced payroll records at the present date."[7] (Docket Entry of Mar. 29, 2010 (emphasis added).) In other words, there was no discovery left to be taken of Plaintiffs.

Moreover, Defendants have had ample opportunity to seek discovery from opt-in Plaintiffs, several of whom opted into this case as early as April 10, 2009. (See Docket Entry # 56.) Defendants have not, however, taken advantage of this opportunity; indeed, according to

---

[7] This failure comports with Defendants' history of causing delays in this case. For instance, on December 11, 2009, and February 5, 2010, the court sanctioned Defendants for failing to comply with discovery orders. (See Damages Decision at 10 (noting that the "vast majority of delays are attributable to Defendants' conduct").)

Plaintiffs, Defendants have sought *no* discovery from opt-in Plaintiffs. (Pl. Reply (Docket Entry # 149) at 3.) Nor have Defendants raised with the court any difficulties obtaining discovery from opt-in Plaintiffs. The court will not allow Defendants to benefit from their own inaction.

          2.    Sufficiency of Evidence

Defendants next contend that Plaintiffs' motion must fail because they have submitted affidavits from only five of the fifty-five opt-in Plaintiffs. Defendants suggest that Plaintiffs must present evidence from "each and every" opt-in Plaintiff to show that they are similarly situated to Plaintiff Gayle. (Def. Opp. at 7.)

The court disagrees. Plaintiffs need not present evidence from "each and every" opt-in Plaintiff so long as they can show that Defendants engaged in a unified policy, plan, or scheme of FLSA violations. See Alonso v. Uncle Jack's Steakhouse, No. 08-CV-7813, 2011 U.S. Dist. Lexis 106356, at *10-12 (S.D.N.Y. Sept. 21, 2011); Ayers, 2007 WL 646326, at *5; Rodolico v. Unisys., 199 F.R.D. 468, 481-83 (E.D.N.Y. 2001). Even where plaintiffs have "otherwise varied circumstances," courts frequently find members of a putative class similarly situated where the plaintiffs were all impacted by a "single decision, policy, or plan." E.g., Ayers, 2007 WL 646326, at *5. As discussed in Part II.B.3, infra, Plaintiffs have established that Defendants engaged in a unified policy of not paying overtime premiums to field nurses. Accordingly, Defendants' contention regarding the sufficiency of Plaintiffs' evidence is mistaken.[8]

          3.    Similarly Situated

Finally, Defendants argue that Plaintiffs' motion must be denied because the opt-in Plaintiffs are not similarly situated to Plaintiff Gayle. (Def. Opp. at 8-13.) In order to determine

---

[8] Plaintiffs request that the court admit facts alleged in Plaintiffs' Request for Admissions. (Pl. Mem. at 21.) Because the court need not rely on those facts in order to grant Plaintiffs' motion for certification of a collective action, Plaintiffs' request is denied as moot.

whether Plaintiffs are similarly situated, the court considers three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." Jacobs, 483 F. Supp. 2d at 265. Each of these factors supports second-stage certification of a collective action.

          a.    *Similarity of Plaintiffs' Factual and Employment Settings*

According to the Vendor List produced by Defendants, the deposition taken of Dorvilier, and Plaintiffs' Affidavits, all of the opt-in Plaintiffs, like named-Plaintiff Gayle, were employed by Harry's Nurses as field nurses on or after November 7, 2004. (See Vendor List (Docket Entry # 136, Ex. 9); Dorvilier Dep. Tr. (Docket Entry # 136, Ex. 5) at 6-9, 22-23; Plaintiffs' Affidavits at 1.) Gayle and the opt-in Plaintiffs were subject to the same hiring, working, supervision, compensation, and termination procedures. (See Liability Decision at 2-8;[9] Plaintiffs' Affidavits; Williams-West Aff. (Docket Entry # 142); Dorvillier Dep. Tr. (Docket Entry # 136, Ex. 4) at 19-20, 33.) Finally, each of the opt-in Plaintiffs challenges the same employment practice as Gayle: Harry's Nurses' failure to pay field nurses earned overtime pay. Each of these factors weighs strongly in favor of a finding that Gayle and opt-in Plaintiffs are similarly situated. See, e.g., Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 130-31 (E.D.N.Y. 2011) (holding that plaintiffs were similarly situated because they shared the same job title and job functions); Scott v. Aetna Serv., Inc., 210 F.R.D. 261, 264-65 (D. Conn. 2002) (denying a motion to decertify because plaintiffs' job duties and responsibilities were substantially similar); Rodolico v. Unisys., 199 F.R.D. 468, 481-83 (E.D.N.Y. 2001) (fact that the challenged employment practice was the same for each of the potential class members

---

[9] The Liability Decision recites facts about the structure of Harry's Nurses that Judge Sifton found were undisputed.

weighed "very strongly" in favor of a collective action).[10]  Accordingly, opt-in Plaintiffs and Gayle are similarly situated with respect to their factual and employment settings.

>     b.     *Defenses Applicable to Individual Plaintiffs' Claims*

The court next considers whether Defendants have asserted affirmative defenses that can be asserted collectively or whether their defenses require individualized determinations that warrant decertification.  Defendants assert three defenses in this action:  (1) that the nurses were independent contractors; (2) that Harry's Nurses is exempt from FLSA coverage because it is organized under Article 36 of the N.Y. Public Health Law; and (3) that the nurses are exempt from the FLSA because they were bona fide professionals.  (See Def. Opp. at 12.)  Defendants concede that the second and third defenses are capable of being asserted collectively.  (Id.)

The court finds that Defendants' first defense is also capable of being asserted collectively.  As discussed above, Harry's Nurses subjected all field nurses to the same hiring, working, supervision, compensation, and termination procedures.  (See Part II.B.3.a, supra.) Thus, Defendants' argument that the nurses were independent contractors does not require individualized determinations, and the second factor favors a finding that opt-in Plaintiffs and Gayle are similarly situated.

---

[10]  Defendants argue that opt-in Plaintiffs' factual and employment settings varied because they had different opportunities for profit or loss.  (Def. Opp. at 9-11.)  The court rejected a similar argument in its Liability Decision. (See Liability Decision at 19-20.)  A plaintiff's opportunity for profit or loss is one factor in the "economic realities" test applied by courts to determine whether an individual qualifies as an employee or an independent contractor under the FLSA.  See, e.g., Brock v. Sup. Care, 840 F.2d 1054, 1058 (2d Cir. 1988).  But Defendants offer no legal support for their assertion that this test has any significance in the context of a second-stage certification determination (see Def. Opp. at 10-11), and the court is aware of none.  In any event, even if differences in opportunities for profit and loss could be considered in the analysis of the potential Plaintiff class, there is no evidence that opt-in Plaintiffs and Gayle differed in this regard; neither Gayle nor the other field nurses had any opportunity for profit or loss at Harry's Nurses beyond collecting an hourly fee.  (See Liability Decision at 19; Plaintiffs' Affidavits.)

c.      *Fairness and Procedural Considerations*

The third factor—fairness and procedural considerations—also weighs in favor of class

certification. Certification is favored where a collective action would lower costs to the

Plaintiffs by pooling resources, efficiently resolving common issues of law and fact, and

coherently managing the class in a manner that will not prejudice any party. See Ayers, 2007

WL 646326, at *6. Here, there are common issues of law and fact that are better resolved

through collective action, including Plaintiffs' employment status and Defendants' policies

toward nurses. Moreover, at least twenty-one of the opt-in Plaintiffs seek an award of less than

$5,000;[11] the pooling of resources will enable Plaintiffs to adjudicate these small claims in a

cost-effective manner. Finally, Defendants have not suggested that they will be prejudiced by

collective action, nor is the court aware of any reason that they would be.

*     *     *     *     *

In sum, because each of the above three factors favors a determination that Gayle and

opt-in Plaintiffs are similarly situated within the meaning of 29 U.S.C. § 216(b), and because

Defendants' arguments with respect to timing and sufficiency of evidence lack merit, Plaintiffs'

motion for second-stage certification of a collective action is granted.

## C.      Plaintiffs' Motion for Summary Judgment

As discussed above, the court has already granted summary judgment to Plaintiff Gayle

and awarded her $7,390 in damages. (Damages Decision at 11-12.) The remaining Plaintiffs

now move for summary judgment as to liability. (As explained in footnote 12 below, the court

does not construe Plaintiffs' motion as a motion for summary judgment with respect to

---

[11] Nineteen of the fifty-five opt-in Plaintiffs have not submitted time and pay records to show that they suffered any damages.

12

damages.[12])  For the reasons set forth below, the court grants summary judgment on liability as to opt-in Plaintiffs.[13]

          1.     Legal Standard for Summary Judgment

Summary judgment is appropriate only when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact.  As to issues on which the party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence that would entitle it to a directed verdict if such evidence were uncontroverted at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  As to issues on which the nonmoving party bears the burden of proof at trial,

---

[12] It is not entirely clear whether Plaintiffs seek summary judgment with respect to damages. On the one hand, Plaintiffs' memorandum of law in support of their instant motion contains a two-sentence section entitled "Plaintiffs Have Proven Their Damages" and asks for the court to "order[] defendants to pay [Plaintiffs] $362,793.96 and an equal amount as liquidated damages." (Pl. Mem. at 18, 22.) But after Defendants' counsel asked the court for an extension of time to review a CD containing Plaintiffs' time and pay records and damage calculations (Alter Ltr. of May 30, 2011 (Docket Entry # 152) at 2)—which Defendants claimed in their opposition papers that they had not yet received (see Def. Opp. at 13-14)—Plaintiffs stated in a letter to the court that an extension of time was unnecessary because "[t]he motion currently before the court concerns certification of the collective action, *not damages*" (Bernstein Ltr. of May 31, 2011 (Docket Entry # 153) at 1 (emphasis added)). On the day of that letter, Defendants' counsel admittedly received Plaintiffs' CD (see Alter Ltr. of June 1, 2011 (Docket Entry # 154) at 1 n.1), and has therefore had over nine months to review Plaintiffs' time and pay records and damages calculations.

The court finds the statement in Plaintiffs' letter to be perplexing in light of the clear request for damages in Plaintiffs' opening brief. In an abundance of caution, the court will not construe Plaintiffs' motion as a motion for summary judgment with respect to damages but will give Plaintiffs an opportunity to file such a motion incorporating the evidence and memoranda they submitted in connection with their instant motion, according to the schedule set forth at the end of this Memorandum and Order.

[13] In assessing Plaintiffs' instant motion, the court relies in part on the findings of fact and determinations of law in prior orders, which are the law of the case. See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003).

the moving party must demonstrate the absence of evidence supporting the nonmoving party's claim.

If the moving party succeeds in its showing, the burden shifts to the nonmoving party to show that there is a genuine issue for trial. Id. at 322-23. The nonmoving party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).

    2.    Application

The court concludes that there is no genuine issue of material fact with respect to Defendants' liability under the FLSA. The FLSA requires covered employers to compensate their employees at one and one-half times the employees' regular pay rate for any work that exceeds forty hours in a week. 29 U.S.C. § 207(a)(1). Here, it is undisputed that the opt-in Plaintiffs were employed by Harry's Nurses as field nurses on or after November 7, 2004, and were not paid overtime wages when they performed over forty hours of work per week. (See Vendor List; Dorvilier Dep. Tr. (Docket Entry # 136, Ex. 5) at 6-9, 22-23; Plaintiffs' Affidavits; Liability Decision at 9.) Defendants assert, however, that Harry's Nurses is exempt from the FLSA for three reasons: (1) the field nurses were independent contractors; (2) Harry's Nurses is organized under Article 36 of the New York Public Health Law; and (3) the field nurses were bona fide professionals. (Def. Opp. at 1.) The court addresses each of these arguments in turn.

First, the court holds that Plaintiffs were employees, not independent contractors, within the meaning of the FLSA. In ruling on Defendants' liability as to Gayle, Judge Sifton held that Gayle was an "employee" under the FLSA, relying on undisputed facts about the structure of

14

Harry's Nurses that are applicable to all opt-in Plaintiffs, who, as discussed above, were subject to the same hiring, working, supervision, compensation, and termination procedures as Gayle. (See Liability Decision at 11-23.) Defendants have submitted no evidence to dispute these findings.[14] Plaintiffs, on the other hand, have submitted five affidavits from individual Plaintiffs and an affidavit from a nursing supervisor (see Williams-West Aff.) supporting Plaintiffs' contention that the opt-in Plaintiffs' employment statuses were the same as Gayle's. Thus, the court rejects Defendants' first affirmative defense and holds that the opt-in Plaintiffs, like Gayle, are "employees" under FLSA.

Defendants' second affirmative defense is also meritless. Article 36 of the New York Public Health Law describes the procedures and regulations for establishing and maintaining a home care services organization. See N.Y. Code Art. 36. But no section of Article 36 exempts home care services organizations from the FLSA and, in any event, no provision of the FLSA permits a state to opt out of the statute.

Finally, the bona fide professional exemption applies only if an employee is paid on a salary basis. 29 C.F.R. § 541.300(a)(1). Harry's Nurses indisputably paid Plaintiffs on an hourly basis. (See Dorvilier Dep. Tr. (Docket Entry # 136, Ex. 4) at 20; Pay Records (Docket Entry # 108, Exs. 1, 3).) Thus, the bona fide professional exemption does not apply to Plaintiffs.

In sum, the court finds that Defendants failed to pay opt-in Plaintiffs overtime wages as required by the FLSA, and that Defendants have asserted no valid defense. Plaintiffs' motion for summary judgment is therefore granted with respect to liability.

---

[14] Although Defendants submitted three affidavits in support of their opposition to summary judgment (Docket Entry ## 145-47), none of these documents disputes facts from Judge Sifton's decision or otherwise creates a genuine issue of material fact with respect to Plaintiffs' employment status.

### D.    Plaintiffs' Motion to Enforce Sanctions

On December 11, 2009, Judge Go ordered Defendants to pay a discovery sanction of $764.17 to Plaintiffs' counsel and an additional $500.00 to the court by December 21, 2009. (Docket Entry of Dec. 11, 2009.) On February 8, 2010, Judge Go ordered Defendants to pay an additional $764.50 to Plaintiffs' counsel. (Docket Entry of Feb. 8, 2010.) Defendants have not paid any part of these sanctions to date. Defendants are ordered to pay these sanctions within fourteen days of this Order. Failure to do so may result in additional sanctions, including a finding of contempt of court.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to strike Plaintiffs' motion is DENIED. Plaintiffs' motion for certification of a collective action is GRANTED. Plaintiffs' motion for summary judgment as to liability is GRANTED. Plaintiffs' motion to enforce sanctions is GRANTED and Defendants are ordered to pay the previously imposed sanctions within fourteen days. Plaintiffs are given leave to file a motion for summary judgment with respect to damages within fourteen days of the filing of this Order, which will incorporate the memoranda of law and evidence they submitted in connection with their instant motion. (Plaintiffs are not to submit an additional opening memorandum of law with respect to damages.) If Plaintiffs file such a motion, Defendants will file any opposition to Plaintiffs' motion within twenty-eight days of the filing of this Order; if Defendants do not file a timely response, the court will rule on Plaintiffs' motion without an opposition. Plaintiffs may file a reply to

16

Defendants' opposition within thirty-five days of this Order.

       SO ORDERED.

                                                   s/Nicholas G. Garaufis

Dated: Brooklyn, New York                     NICHOLAS G. GARAUFIS
      March _l_ , 2012                   United States District Judge

17