UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

CLAUDIA GAYLE, Individually, On Behalf
of All Others Similarly Situated as
Class Representative,                           REPORT AND
                                               RECOMMENDATION ON
                              Plaintiffs,       DEFENDANTS' MOTION
                                               FOR SANCTIONS
            - against -
                                               CV 07-4672 (NGG)(MDG)
HARRY'S NURSES REGISTRY, INC., and
HARRY DORVILIER a/k/a HARRY DORVILIEN,

                              Defendants.

- - - - - - - - - - - - - - - - - - -X

    This is a collective action brought under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., in which the Court

had entered three judgments in favor of plaintiffs for damages and

attorneys' fees and costs against defendants HARRY'S NURSES

REGISTRY, INC. ("Harry's Nurses") and HARRY DORVILIER a/k/a HARRY

DORVILIEN ("Dorvilier").  See DE 180, 214, 225 (judgments entered

on 9/19/2012, 10/22/2013 and 4/15/2015, respectively).  Defendant

Harry Dorvilier, originally proceeding pro se,[1] filed a letter

dated September 22, 2017 entitled "Motion for Sanctions" which the

Honorable Nicholas G. Garaufis has referred to me for report and

recommendation.  See DE 233 (Motion for Sanctions); DE 236 (sealed

exhibits in support of motion); DE 235 (order referring motion).

_____

    [1]  Thomas F. Liotti, Esq. filed a notice of appearances on
behalf of both Mr. Dorvilier and Harry's Nurses Registry, Inc. on
July 9, 2018.  See DE 244.

## **PERTINENT BACKGROUND**

The tortured history of this litigation spanning over eight and one-half years has been discussed at length in numerous opinions of the Court and is briefly summarized below.

**Judgments Entered**

Commencing this action on November 7, 2007 on behalf of herself and other similarly situated nurses employed by defendants, Plaintiff Claudia Gayle sought to recover unpaid overtime pay and liquidated damages under the FLSA for hours worked in excess of forty hours a week. See Complaint (DE 1) at ¶¶ 22-24. In a memorandum and order filed March 9, 2009, the late District Judge Charles P. Sifton granted partial summary judgment to Ms. Gayle as to liability and conditionally certified a class under the FLSA. See DE 53. Ultimately, fifty-five other nurses filed consents to join this action as party plaintiffs. See DE 15, 55-59, 62, 66-73, 79-80, 85, 88-89.

After reassignment of this action to him, the Honorable Nicholas G. Garaufis granted four additional motions filed by the plaintiffs. Judge Garaufis granted partial summary judgment as to liability in favor of the other plaintiffs on March 2, 2012 (DE 162), and awarded damages to plaintiff Claudia Gayle on December 30, 2010 (DE 127) and to 34 other plaintiffs on September 18, 2012.[2] See DE 179. The Clerk of the Court entered judgment on

---

[2] Plaintiffs sought damages for 35 plaintiffs, but Judge Garaufis did not award damages for Getty Recourt, who had not submitted any pay records. See DE 179 at 8.

September 19, 2012 (the "2012 Judgment") against defendants Harry's Nurses and Mr. Dorvilier, jointly and severally, in the amount of $14,780.00 in favor of Plaintiff Claudia Gayle and $619,071.76 in favor of 34 other plaintiffs listed in an appendix to the judgment. See DE 180.  On September 30, 2013, Judge Garaufis adopted this Court's report and recommendation (DE 206) ("Aug. 2013 R&R") to grant the plaintiffs' motion to amend and for attorneys' fees and costs, thereby awarding damages to two additional plaintiffs, increasing damages to two other plaintiffs and awarding attorneys' fees and costs.  See DE 211.  The Clerk of the Court entered an additional judgment on October 22, 2013 (the "2013 Judgment") awarding damages of $300 and $1,140 to plaintiffs Ramdeo Chankar Singh and Getty Rocourt, respectively; additional damages of $6,512.00 to plaintiff Jane Burke Hylton and $118,512.00 to Yolanda Robinson;[3] and attorneys' fees and costs of $130,214.46 to plaintiffs.  See DE 214.

After entry of the 2013 Judgment, the defendants filed a notice of appeal to the Second Circuit.  See DE 215.  The Second Circuit affirmed the prior decisions of this Court granting summary judgment, specifically rejecting defendants' contention that the plaintiff nurses were independent contractors rather than employees

---

[3]   This Court recommended in the Aug. 2013 R&R that the damages awarded to Yolanda Robinson in the 2012 judgment (DE 180) be recalculated and increased to $210,864.  See DE 206 at 15-16. Thus the second judgment entered on September 30, 2013 (DE 211) provided for damages of $118,512.00 in favor of Ms. Robinson, which was the difference between the recommended recalculated damages and the $92,352.00 in damages initially awarded to Ms. Robinson in the 2012 Judgment.

and finding defendants' other arguments meritless.  <u>See</u> <u>Gayle v. Harry's Nurses Registry, Inc.</u>, 594 Fed. Appx. 714, 718 (2d Cir. 2014).  Defendants then filed a petition for writ of certiorari to the United States Court of Appeals for the Second Circuit, which the Supreme Court summarily denied.  <u>See</u> <u>Gayle v. Harry's Nurses Registry, Inc.</u>, 135 S. Ct. 2059 (2015).  After Judge Garaufis granted plaintiffs' second motion for attorneys' fees and costs related to post-judgment proceedings (<u>see</u> DE 226), the Clerk of the Court entered a third and final judgment in favor of plaintiffs on April 15, 2015 in the amount of $41,429.17 (the "2015 Judgment").  <u>See</u> DE 226.

In sum, in three judgments entered against both defendants, this Court awarded plaintiffs damages amounting $760,315.76 for lost wages and liquidated damages under the FLSA, and fees and costs of $171,643.39, for a total of $931.959.39.  <u>See</u> DE 180, 214, 225.

**<u>Collection of Judgments</u>**

Central to the defendants' motion is the undisputed fact that plaintiffs' counsel successfully levied against defendants' assets and collected $931.959.39, the full amount of the three judgments entered.  <u>See</u> DE 228 at 1 (9/5/2017 Letter); DE 232 at 1 (Bernstein letter dated 9/15/2017).  This Court has prepared and is filing herewith as Appendix A a "Chronology of Judgments and Funds Collected" which sets forth the dates of each judgment, amounts collected and the aggregate amounts disbursed.

As indicated in Appendix A, after entry of the 2012 Judgment, the plaintiffs collected $633,851.76, the full amount of that judgment through levies on defendants' accounts on November 23, 2012 and January 2, 2013. Id., lns. 2, 3; DE 228 at 83, 95 (cashier checks for levied funds payable to the U.S. Marshal). On January 8, 2014, plaintiffs collected $256,678.46, the full amount of the 2013 Judgment entered on October 22, 2013. Id., ln. 7, DE 228 at 61. On August 5, 2015, plaintiff collected the full amount of the third judgment entered on April 15, 2015 for post-judgment fees and cost of $41,429.17.[4] Id., ln. 11; DE 228 at 74.

**Defendants' Motion**

Since defendant Henry Dorvilier initially filed his motion without benefit of counsel, he set forth his claims and contentions in many different submissions before appearance of counsel. This Court will discuss some of his filings in order to set forth all of defendants' contentions, but will not reference subsequent filings which repeat arguments and allegations made in earlier submissions.

In his first post judgment submission filed on September 5, 2017 entitled "Satisfaction of Judgment" (the "9/5/2017 Letter"), Mr. Dorvilier complains, inter alia, that plaintiffs' counsel, Jonathan Bernstein of the firm Levy Davis & Maher, LLP ("Levy Davis"), had failed to provide satisfactions of judgments after collecting the full amount of the judgments entered; and had

---

[4] Plaintiffs have not sought to collect post-judgment interest pursuant to 28 U.S.C. § 1961.

"double dipped" by appropriating funds collected that should have been paid to the plaintiffs and receiving more monies than what the Court awarded.  See DE 228 at 1-2.  As proof that Levy Davis did not pay the plaintiffs, Mr. Dorvilier submitted affidavits signed by plaintiffs Paulette Miller (DE 228-1 at 43), Lindon Morrison (DE 228-1 at 44) and Yolanda Robinson (DE 228-1 at 42) (hereafter, each will be referred to as "Plaintiff-Affiant") in which each attested that he or she received less compensation than was awarded in this action.  In their affidavits, each Plaintiff-Affiant stated the amount he or she was entitled to receive and the actual (and lesser) check amount the affiant claimed to have receive from Levy Davis.  See ¶¶ 7 and 8 of the affidavits of Miller, Morrison and Robinson (DE 228-1 at 42-43).  The affidavits are identical in form, with handwritten numbers inserted for the amounts awarded and received.  Id.  In a letter dated October 27, 2017 entitled "Motion for Sanctions" (DE 236), Mr. Dorvilier submitted an affidavit from a fourth plaintiff, Jane Burke Hylton, which was signed on October 27, 2017 using the same form as the affidavits signed by the other three Plaintiff-Affiants.  See DE 268-1 at 2.  In her affidavit, Ms. Burke Hylton also stated that she received only one check from Levy Davis for less than the full amount of damages awarded.  See DE 268-1 at 2.

Mr. Dorvilier also submitted two unsigned form affidavits purportedly from plaintiffs Annabel Llewellyn and Brenda Lewis, which also had handwritten numbers for the amounts of compensation to be received and the smaller amount actually received.  See DE

228 at 36, 38 (Exhibits to Def.'s 9/5/2017 Letter).  He also
provided a copy of a Notice of Levy issued by the Internal Revenue
Service against plaintiff Sulaiman Ali-el and claimed that this
plaintiff is deceased.  See DE 228 at 4; 45 (notice of levy).  Mr.
Dorvilier also asserted his belief that plaintiff Claudia Gayle was
likely not to have received any funds from Mr. Bernstein since she
had been deported.  See DE 236 at 1.

As further support for his argument that Levy Davis did not
pay plaintiffs the amounts awarded, Mr. Dorvilier quoted a passage
from a letter dated June 13, 2016 sent by Mr. Bernstein to the
Grievance Committee[5] of the Appellate Division of the First
Judicial Department of the New York State Supreme Court ("Grievance
Committee") stating that "of the $760,496.96 collected
(representing the judgment for the plaintiffs exclusive of
attorney's fees ...), $13,719.04 remains in my firm's trust
account."  DE 228 at 5, 27 (excerpt of 6/13/2016 letter to the
Department Disciplinary Committee).  Mr. Dorvilier contended that
any amounts remaining in escrow should be returned to him and seeks
proof all proper tax filings were made and an accounting of the
records of Mr. Bernstein's firm.  Id. at 5-6.

Next, Mr. Dorvilier inexplicably claimed that the judgments
filed by Levy Davis in Queens County is evidence of "double

---

[5]  The disciplinary proceedings apparently had been initiated
by Mr. Dorvilier, but the Grievance Committee found after an
investigation that there did not "appear to be a sufficient basis
to conclude that [Jonathan Bernstein] failed to deliver judgment
proceeds belonging to his client."  Letter dated 4/28/2017 from the
attorney Grievance Committee to Harry Dorvilier (DE 234-1) at 1.

dipping" and points to eight transcripts of judgments from the Queens County Clerk's Office.  See DE 228 at 3 (letter); at 12, 22, 24, 28, 29-32 (transcripts of judgment).  Mr. Dorvilier did not provide any explanation how the docketing of these judgments in Queens County would constitute evidence of "double billing," or why he would otherwise be entitled to an audit or examination of the disbursements to plaintiffs by Levy Davis, which he has sought. The eight judgments docketed in Queens County simply correspond to the three federal judgments entered in this Court as follows:  (1) two judgments reflect the 2012 Judgment -- one in favor of Claudia Gayle for $14,780.00 and one for $619,071.76 in the name of for Susan Ajiboye, the first plaintiffs named in the appendix to the 2012 Judgment, as well as the other plaintiffs in an appendix annexed to the transcript; (2) five judgments reflect the 2013 Judgment -- four in the names of Yolanda Robinson, Jane Burke Hylton, Getty Recourt and Ramdeo Singh for damages awarded,  and one in the name of Claudia Gayle for $130,214.46, for the amount of attorneys' fees and costs awarded; and (3) one judgment in favor of Claudia Gayle for $41,429.17 reflects the 2015 Judgment awarding fees and costs.  Id.

In addition, Mr. Dorvilier contends in his 9/5/2017 Letter that the prior decisions of Judge Sifton and Judge Garaufis should be reversed.  See 228 at 2.  Insofar as he still seeks such relief, these contentions clearly are meritless in light of defendants' unsuccessful appeals in this case and will not be further discussed in this report and recommendation.

By order filed on September 14, 2017, Judge Garaufis directed Plaintiffs to file a letter by September 22, 2017 "(1) stating whether Plaintiffs have received from Defendants all amounts due under the court's judgments in this case; and (2) responding to Dorvilier's allegation that Bernstein has received payments from both the court-awarded attorneys' fees and from the amounts awarded to Plaintiffs and, if so, providing the legal basis ... " DE 230 (Order dated 9/12/2017). In his letter dated September 15, 2017, Mr. Bernstein stated that Levy Davis had paid the Plaintiffs all amounts due under the judgments in the case, except for $13,719.04, which was not paid to some plaintiffs who could not be located and to one plaintiff who refused to provide her Social Security number. See DE 232 at 1-2. He acknowledged that he had failed to issue satisfactions of judgment in a timely fashion, but claimed he provided the satisfactions a few days after being asked by Robert Schirtzer, an attorney who was representing defendants at a deposition in another FLSA case brought by different nurses and who had previously represented defendants for a period of time in this case. Id. at 1, n. 2 (referring to Isiqi v. Harry's Nurses Registry, Inc., 16cv2218 (FB)(SMG))).

On September 22, 2017, Mr. Dorvilier filed a letter addressed to Judge Garaufis entitled "Motion for Sanctions" arguing that plaintiffs' counsel had not complied with Judge Garaufis's September 15th order, neither providing proper satisfactions of judgment nor presenting documentation showing that plaintiffs had been paid in accordance with the judgments and tax laws. See DE

233.   Judge Garaufis then referred the motion to me for report and recommendation.   See DE 235.

In an order electronically filed on November 2, 2017, this Court directed plaintiffs' counsel to file "an accounting which sets forth all the amounts collected to satisfy the judgments entered herein and all disbursements made [which] must include the amounts and dates of all checks disbursed to the individual plaintiffs and dates the checks were negotiated."  In his response, Mr. Bernstein provided a chart setting forth the amounts received from levies by the U.S. Marshal and the aggregate distributions made to the plaintiffs and to his firm for attorneys' fees and costs.  See DE 237 at 1 (letter of Jonathan Bernstein dated November 13, 2017) and 237-1 (chart).  Besides discussing the checks Levy Davis had issued to the four Affiant-Plaintiffs and the plaintiffs whose unsigned affidavits had been submitted by Mr. Dorvilier, Mr. Bernstein attached a spreadsheet containing information as to all the checks issued from his firm's escrow account to each plaintiff, including check numbers, dates and amounts of checks and the dates that checks were negotiated.  See DE 237 at 3-5 (letter); DE 237-2 (spreadsheet).

As to plaintiff Sulaiman Ali-El, Mr. Bernstein stated that a check that Levy Davis mailed in 2014 was returned and that the balance of the award was later sent to taxing authorities after Levy Davis received a notice of levy from the New York State Department of Taxation.  See DE 237 at 5.  Mr. Bernstein also stated that plaintiff Martha Ogunjana had not negotiated a check

sent to her in 2014 for full payment of her $653 damages award, and that his firm did not send checks to six plaintiffs who could not be located and to Brenda Lewis who had refused to provide her Social Security number. Id. at 2-4.

Following the appearance of Mr. Liotti on behalf of defendants, this Court held a conference on July 19, 2018 and ordered plaintiffs' counsel to provide copies of the fronts and backs of all checks issued by counsel to the four Plaintiff-Affiants and to submit for in camera inspection copies of all escrow checks issued to other plaintiffs during the same time frame. See DE 248 (Minute Order dated 7/19/2018). By letter dated July 24, 2018, Mr. Bernstein filed copies of the fronts and backs of the checks issued to the four Plaintiff-Affiants and copies of bank statements for the Levy Davis attorney trust account for the periods from January 1, 2013 through April 30, 2013 and January 1, 2014 through February 29, 2014 for in camera inspection. See DE 249 (letter); DE 250 (sealed checks and bank statements). By electronic order filed on July 25, 2015, this Court directed Mr. Bernstein, inter alia, to send the four Plaintiff-Affiants "copies of the fronts and backs of the checks made to each of them, respectively, together with a copy of their respective affidavits and this electronic order." See ECF Order filed on 7/25/2018. This Court further stated in the order that: "The plaintiffs are advised they may send a response to this Court, at 225 Cadman Plaza East, Brooklyn, NY 11201 or to Mr. Bernstein, who is responsible for filing any response received." Id.

On July 27, 2018, Mr. Bernstein filed a revised spreadsheet to add information regarding the dates that checks issued to three plaintiffs were negotiated, and bank statements for his firm's escrow account for March 2013 and March 2014 for in camera inspection. See DE 251 (letter); 251-1 (spreadsheet); 252 (sealed bank statements). Mr. Bernstein subsequently filed a status report on August 17, 2018 attaching copies of his letters to the four Plaintiff-Affiants in which he provided copies of canceled checks and the ECF Order filed July 25, 2018. See DE 257 and 257-1. He also filed a handwritten letter dated August 11, 2018 from plaintiff Jane Burke Hylton to Levy Davis stating that "the Two checks mentioned in your letter was [sic] received as mentioned" and apologized for not remembering about the checks and for any inconvenience caused. See DE 257-2. Mr. Bernstein also stated he had not heard received any communication from plaintiffs Robinson, Miller or Morrison, nor received a response from plaintiff Martha Ogunjana to his letter regarding a $653 check to her that had not been cashed. See DE 257 at 1-2.

Findings regarding Funds Distributed to the Plaintiffs. This Court has examined the copies of the checks issued to Plaintiff-Affiants and the bank statements submitted, which also include copies of the fronts of all negotiated checks. As this Court advised at a conference held on August 17, 2018, "the dates and amounts of checks issued to the plaintiffs set forth in the spreadsheets and other documents filed by plaintiffs' counsel are consistent with the bank records examined." Minute entry for

conference on 8/17/2018.

To assist in analyzing the checks disbursed by plaintiffs' counsel to the plaintiffs, this Court has prepared a new spreadsheet filed herewith as Appendix B which contains the same check data as in the revised spreadsheet filed by plaintiffs' counsel on July 27, 2018 (DE 251-1), but organizes the checks disbursed by year.  Appendix B also includes three additional dates that checks were negotiated, based on information contained in the bank statements this Court examined.  In addition, since plaintiffs' counsel states that the check issued to Martha Ogunjana for $653 has not been cashed, this Court has changed the information as to Ms. Ogunjana, reducing the amount paid to her to $0.00 and adding that $653 remains unpaid.  This, in turn, increases the escrow balance from the amount in plaintiffs' spreadsheets by $653 to $14,197.04.  See Appendix B, col. P; see also, Appendix A, col F, ln. 13.  This Court has highlighted and used red typeface the data in Appendix B that differ from the information contained in the by plaintiffs' spreadsheets.  Contrast Appendix B with DE 251-1.

As reflected in columns D, H and L of Appendix B, Levy Davis issued checks to plaintiffs totaling $440,933.83 in 2013; checks totaling $288,722.93 in 2014; and 5 checks after 2014 totaling $17,114.96. With respect to the checks issued to the plaintiffs in 2013, Mr. Bernstein stated that after his firm collected the 2012

Judgment,[6] his firm decided to send each plaintiff only 75% of the damages awarded and to retain the balance for payment of fees, which had not yet been determined. See 9/15/2017 letter (DE 232) at 3. He said his firm did so, because of concern that any fees awarded might not be collectible once judgment was entered and because the retainer agreement with the Plaintiff provided for fees of the greater of "(a) one-third of the recovery or (b) monies designated by the Court as attorneys' fees..." Id. at 3-4. This Court has confirmed that the amount sent to each plaintiff in 2013, as set forth in column D of Appendix B, indeed equals 75% of the amounts awarded to each plaintiff. However, the aggregate amount distributed ($440,933.83) was only 70% of the 2012 Judgment of $633,851.76, since checks to 14 of the plaintiffs either were returned or were not sent to plaintiffs whom Levy Davis could not locate. See DE 232 at 2 (noting that Levy Davis had not been able to locate several plaintiffs); 237 at 4, 5 (noting that checks mailed to Martha Ogunjana in 2012 and to Sulaiman Ali-El in 2014 had been returned by the Post Office).

After the Court entered the second judgment on October 22, 2013 awarding increased or new damages to certain plaintiffs and attorneys' fees and costs, Levy Davis issued a check to itself on October 25, 2013 for $130,214.46 for fees and costs, leaving an escrow balance of $62,703.47. See Appendix A, lns. 5, 6.

---

[6] Mr. Bernstein incorrectly stated in his letter that the judgment entered in 2012 was for $619,071. DE 232 at 3. That amount was the judgment for the plaintiffs other than Claudia Gayle, who was awarded damages of $14,780 in 2010. That damage award was included in the 2012 judgment.

Plaintiffs' counsel then collected the full 2013 judgment on January 8, 20144 and distributed checks to plaintiffs totaling $288,722.93 in January and February 2014, and four checks to plaintiffs totaling $17,114.96 after 2014.  Id., lns. 8, 10.

This Court specifically finds, based on the bank statements and checks submitted, that all the information in plaintiffs' spreadsheets regarding the 25 checks issued by plaintiffs' counsel to 24 plaintiffs[7] in 2013 and the 26 checks issued to plaintiffs in 2014 accurately reflects the checks reviewed, except that corroborating information is lacking for three checks issued in 2013 to plaintiffs Willie Evans, Merlyn Patterson and Patricia Robinson, who apparently negotiated their checks after April 1, 2013, in months for which there were no bank statements submitted by plaintiffs.[8]  The checks issued in these two years totaled $746,118.72.  See Appendix A.  In addition, the notice of levy and other documentation Mr. Bernstein has submitted adequately demonstrates that Levy Davis sent $5,802.98, the balance of the

---

[7]   The entry for plaintiff Claudia Gayle on the spreadsheets and Appendix B show that the two checks totaling $11,085.00 were issued to her in 2013.  As explained by plaintiffs' counsel, Ms. Gayle had requested that a check for $1,000 be drawn to a creditor. See 11/17/2017 letter of J. Bernstein (DE 237) at 3.  This Court confirmed from the bank statements that check # 16647 for $10,085.00 made to Ms. Gayle's order was negotiated on January 29, 2013 and check number 15548 for $1,000 check payable to the order of an attorney was negotiated on February 6, 2013.

[8]   The bank statement filed for March 2013 by plaintiff did include a copy of the $8,408.92 check negotiated by Sulaiman Ali-El, but does indicate that check # 16762 for that amount was negotiated on March 5, 2013, as reflected in the spreadsheet plaintiff filed.  Compare DE 250 at 1, 3 (bank statement) with DE 251-1 (spreadsheet, ln. 2)

judgment owed plaintiff Sulaiman Ali-E, to the New York State
Department of Taxation and Finance in response to a Tax Compliance
Levy served on the firm regarding this plaintiff's tax obligations.
See DE 237 at 5; 237-3 (notice of levy and 5/8/2017 letter from
Jonathan Bernstein forwarding check to Department of Taxation).
Thus, this payment is properly credited on plaintiffs' spreadsheets
as a payment to Sulaiman Ali-E.

Plaintiffs also indicate in their spreadsheets that in 2015,
Levy Davis sent checks totaling $11,311.98 to plaintiffs Ramdeo
Charkar Singh, Mary Davis, Nathalie Francois and Jacqueline Ward.
See Appendix B, col. L.  Although Levy Davis did not submit the
bank statements for the months that the four checks to these
plaintiffs were negotiated, this Court finds no reason to require
submission of additional bank statements to verify the information
on the plaintiffs' spreadsheets, given the accuracy of all the
other information on the spreadsheet as to almost all other checks
sent to plaintiffs, as discussed above, and given the absence of
any indication from the plaintiffs to whom checks had been issued
in 2015 that they did not receive full payment of their awards.

Even though the statements of the four Plaintiff-Affiants in
their affidavits initially raised concerns that Levy Davis had not
sent these plaintiffs their full awards, the checks and bank
statements submitted by counsel dispel such concern.  The
submissions show that Levy Davis issued two checks to each
Plaintiff-Affiant for the full amounts of their awards -- the first
check for 75% of the award in 2013 and a second check for the

-16-

balance in 2014.  See DE 250 at 1-8 (checks); 13, 15-16 (1/2013 bank statements); 21-22, 24-26 (2/2014 bank statements); Appendix B.

Significantly, Jane Burke Hylton, one of the Plaintiff-Affiants, sent a letter to Levy Davis admitted that she had indeed received the two checks that Levy Davis said it had sent to her. See DE 257-2.  Neither the defendants nor the other Plaintiff-Affiants, who have been provided copies of the fronts and backs of checks issued to the Plaintiff-Affiants, have disputed that accuracy of  the checks sent to Plaintiff-Affiants and negotiated by them.

Moreover, the copies of the two checks that Levy Davis issued to each Plaintiff-Affiant bear signatures that are very similar to each other, as well as to the signature on the affidavits of the Plaintiff-Affiants  Compare DE 228-1 at 42-4 (affidavits of Yolanda Robinson, Paulette Miller and Lindon Morrison), DE 236-1 at 1 (affidavit of Jane Burke Hylton) and DE 249 (Bernstein letter); with DE 250 at 1-8 (copies of checks to the Plaintiff-Affiants). In the case of Yolanda Robinson, Paulette Miller and Jane Burke Hylton, each admitted to receiving one check in the same amount as reflected in the checks issued on January 29, 2013 to her.  See DE 228-1 at 42-3 (affidavits of Yolanda Robinson and Paulette Miller), DE 236-1 at 1 (affidavit of Jane Burke Hylton) and DE 250 at 1, 3 and 7 (copies of checks plaintiffs Robinson, Burke Hylton and Miller).  The signatures of these three Plaintiff-Affiants endorsed on backs of these checks are strikingly similar to the signatures

on the backs of the checks issued in 2014 that the Plaintiff-Affiant do not acknowledge receiving. <u>Compare</u> DE 250 at 1, 3 and 7 (checks acknowledged to have received by plaintiffs Robinson, Burke Hylton and Miller, respectively) with DE 250 at 2, 4 and 8 (checks plaintiffs Robinson, Burke Hylton and Miller claim in their affidavits that they not receive).

The signature of Plaintiff-Affiant Lindon Morrison in his affidavit is also similar to his signatures on the backs of the two checks issued by Levy Davis. <u>Compare</u> DE 228 at 44 (affidavit) with DE 250 at 5, 6 (checks). However, the amount that Mr. Morrison acknowledged in his affidavit as having received ($38,321.00) is different from the amounts reflected in either of the two checks that Levy Davis issued to Mr. Morrison ($34,440.75 on June 19, 2013 and $11,480.25 on January 30, 2014). <u>Id.</u> Since this discrepancy in check amounts is more than a typographical error, serious questions are raised whether Mr. Morrison's affidavit was accurate when signed, particularly since Jane Burke Hylton has already disclaimed the statements in her affidavit.[9]

---

[9] The affidavits of Jane Burke Hylton and Lindon Morrison lend support for Mr. Bernstein's suspicions raised in his September 25, 2017 letter the affidavits produced were fraudulently procured by a private investigator employed by Mr. Dorvilier and are not accurate. <u>See</u> DE 234 at 1. Mr. Bernstein submitted an affidavit from plaintiff Bernice Sankar stating that she received a voice mail message from a person identifying himself as Ryan of Investigative Management who stated that if she could be eligible for more money if she signed an affidavit stating that she did not receive the amount of money she was entitled to receive. <u>See</u> letter (DE 234) at 1; Sankar affidavit (DE 234-2).

## LEGAL DISCUSSION

The Defendants raise two primary claims in their post-judgment motion for sanctions which center on the post-judgment conduct of plaintiffs' counsel:  (1) that Levy Davis had failed to provide satisfactions of judgments after collecting the full amount of judgments, and (2) that counsel retained collected funds that should have been paid to individual plaintiffs.

Since federal courts are courts of limited jurisdiction, this Court first addresses the threshold issue whether the Court has subject matter jurisdiction the claims raised.  Cf. Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 488 n. 10 (1999) (a federal court is free to examine its subject-matter jurisdiction sua sponte).  "As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to 'vindicate its authority, and effectuate its decrees.'"  Dulce v. Dulce, 233 F.3d 143, 146 (2d Cir. 2000) (quoting Peacock v. Thomas, 516 U.S. 349, 354 (1996)).  The Supreme Court in Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994), recognized that ancillary jurisdiction "existed in only two types of situations:  1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and, 2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority and effectuate its decrees."  HBE Leasing Corp. v. Frank, 882 F. Supp. 60, 61-63 (S.D.N.Y. 1995) (citing Kokkonen at 378); see also Peacock, 516 U.S. at 354.

Although defendants' request to compel plaintiffs to provide satisfactions of judgment does not technically pertain to enforcement of any judgment or order of this Court, the only issue remaining, as discussed below, pertains to whether satisfactions of judgment have been filed in this Court. See 8/24/2018 letter of Thomas Liotti (DE 258) at 1. Since the determination of whether proper satisfactions of judgment have been filed in this Court concerns docket management and does not raise new issues of liability or claims, I respectfully recommend that this Court exercise ancillary jurisdiction to address this aspect of defendants' motion. Cf., Kokkonen, 511 U.S. at 378.

Second, the issue whether plaintiffs' counsel properly paid the funds collected to the plaintiffs clearly falls within the ancillary jurisdiction of this Court to insure that the awards made to the plaintiffs and embodied in the judgments entered were properly paid. Cf. Grimes v. Chrysler Motors Corp., 565 F.2d 841, 843-44 (2d Cir. 1977) (affirming district court's jurisdiction to supervise the distribution of settlement funds). In any event, this Court may properly exercise jurisdiction over the issue of disbursement of funds under its "inherent authority to police the conduct of attorneys as officers of the court." In re World Trade Ctr. Disaster Site Litig., 754 F.3d 114, 125-26 (2d Cir. 2014). Notwithstanding the fact defendants lack standing to raise non-payment claims on behalf of any plaintiff, I recommend that the Court exercise ancillary jurisdiction, as well as its inherent power, to hear that aspect of the defendants' motion regarding the

-20-

alleged failure of counsel to distribute funds to plaintiffs
collected under judgments entered in this Court.

Satisfactions of Judgment.  In his letter filed on September
5, 2017, Mr. Dorvilier complained that plaintiffs' counsel failed
to provide satisfactions for the judgments filed in Queens County,
as discussed above.  See DE 228 at 2-3.  As Thomas Liotti, counsel
for defendants, noted in his letter dated July 9, 2018, those
judgments still had not been satisfied as of the date of his
letter.  See DE 245 at 1.  Mr. Bernstein advised in his letter
dated August 6, 2018 that he had filed seven satisfactions of
judgment with the Queens County Clerk, and submitted copies of the
filed satisfactions.  See DE 254 (letter); DE 254-1 (satisfactions
of judgment).  In a letter dated August 10, 2018, Mr. Bernstein
provided a copy of a satisfaction of judgment filed in Queens
County with respect to an eighth satisfaction of judgment in favor
of plaintiff Getty Recort.  See DE 255 (letter); DE 255-1
(satisfaction of judgment).

Each satisfaction of judgment bears the stamp of the County
Clerk, Queens County indicating that the satisfaction had been
entered by the Queens County Clerk --  seven satisfactions were
entered on August 2, 2018 (DE 254-1) and an eighth was entered on
August 8, 2018 (DE 255-1).  This Court has examined the
satisfactions of judgment submitted and find that they properly
dispose of the eight judgments docketed in Queens County noted on
the transcripts of judgment filed by defendants.  Compare DE 245-2
at 2 (transcript of judgment for Gayle for fees) with DE 254-1 at 2

-21-

(filed satisfaction); DE 245-2 at 7 (transcript of judgment for Getty Recourt) with DE 256-1 (filed satisfaction); DE 245-2 at 12 (transcript of judgment for Ramdeo Singh) with DE 254-1 at 3 (filed satisfaction); DE 245-2 at 15 (transcript of judgment for Claudia Gayle) with DE 254-1 at 6 (filed satisfaction); DE 245-2 at 20 (transcript of judgment for Claudia Gayle for fees) with DE 254-1 at 1 (filed satisfaction); DE 245-2 at 25 (transcript of judgment for Yolanda Robinson) with DE 254-1 at 7 (filed satisfaction); DE 245-2 at 30 (transcript of judgment for Jane Burke Hylton) with DE 254-1 at 4 (filed satisfaction); DE 245-2 at 34 (transcript of judgment for Susanna Ajiboye, <u>et al.</u>) with DE 254-1 at 5 (filed satisfaction).

Although defense counsel initially argued (incorrectly) that the satisfactions presented were defective because they had been signed by counsel rather than the plaintiffs (<u>see</u> 8/13/2018 letter (DE 256)), Mr. Liotti later acknowledged in his August 24, 2018 letter that he had confirmed with the Queens County Clerk that the judgments had been satisfied. <u>See</u> DE 258 at 1. However, Mr. Liotti inexplicably now contends that four judgments filed in this Court have not yet been satisfied. <u>Id.</u> As a preliminary matter, this Court notes that there were only three judgments entered in this action, as discussed above. <u>See</u> DE 180, 214 and 226; <u>supra</u> at 2-3. Defendants incorrectly refer to "Judgment 1" as a $619,071.76 judgment dated September 12, 2012 and "Judgment 2" as a $14,780 judgment dated December 31, 2017. <u>See</u> DE 258 at 1 (letter). Although Judge Garaufis awarded damages first to Claudia Gayle in

on December 30, 2010 (DE 127 at 12) and then to the other plaintiffs on September 18, 2018 (DE 179 at 10), these damages awards are embodied in a single judgment entered on September 19, 2012.  See DE 180.  As plaintiffs' counsel correctly points out, satisfactions of judgment for this 2012 Judgment and the two judgments entered in this Court were filed on February 22, 2018. See letter of Jonathan Bernstein filed Aug. 26, 2018 (DE 259) at 1 (noting satisfactions of judgment filed (DE 240)).

Since there are no judgments entered in this action or any judgments docketed in Queens County that remain to be satisfied, that part defendants' motion for sanctions seeking to compel plaintiffs to file satisfactions of judgment is moot.  See Westchester v. U.S. Dep't of Hous. & Urban Dev., 778 F.3d 412, 416-17 (2d Cir. 2015) (an action becomes moot when court is not able to grant any relief).  Thus, I respectfully recommend that this prong of defendants' motion for sanctions be denied.

Disbursement of Funds to Plaintiffs.  The bank statements and copies of checks submitted by Mr. Bernstein, as an officer of the Court, provide persuasive evidence that appropriate funds were disbursed to the plaintiffs.  As discussed above, this Court finds from examining these records that the information about the checks listed in Appendix B and plaintiffs' spreadsheets are corroborated by the bank statements, except for three checks listed for 2013 and three in 2015.  Accordingly, this Court finds that Levy Davis properly paid plaintiffs the amounts awarded to them by the Court.

Nonetheless, Mr. Liotti persists in his letter filed on August 24, 2018 in arguing that Levy Davis has "double dipped" and asserts that Mr. Bernstein has collected from funds that should have been paid to the plaintiffs a contingency fee in addition to the fees awarded under the federal judgments. See 8/24/2018 Letter (DE 258) at 2. However, other than making this bald assertion that Levy Davis collected a contingency fee, id., defendants have presented no evidence in support other than the affidavits from the four Plaintiff-Affiants. However, Levy Davis has produced copies of checks undermining the statements made in the affidavits that each Plaintiff-Affiants received only one of two checks issued. Defendants have not countered with any further evidence to cast doubt on the accuracy of the checks provided or otherwise to show that the four Plaintiff-Affiants did not actually receive the second check issued to them.

Defendants also have not contested the validity of the letter from Jane Burke Hylton retracting her statement in affidavit that she received only one check. Although defendants complain that the three other Plaintiff-Affiants have not provided similar letters of retraction, what is more probative is that the other Plaintiff-Affiants have not disputed that they were sent the two checks after that Mr. Bernstein sent copies of them and this Court's order inviting them to respond.

Thus, this Court finds that defendants have not presented sufficient evidence to support this prong of their motion that Levy Davis pocketed monies that should have disbursed to the Plaintiff-

Affiants and the other plaintiffs.  Accordingly, I respectfully recommend that this second prong of defendants' motion for sanctions be denied.

Last, defendants seek return of any amounts not paid to individual plaintiffs remaining in the escrow account of Levy Davis.  See DE 228 at 5.  Mr. Bernstein has stated that Levy Davis will file a motion for leave to make a cy pres donation of remaining funds to charity.  See DE 232 at 3.  Since the question of disposition of the remaining funds in the Levy Davis escrow account has not been properly briefed with legal authority, this Court will issue in an order setting a schedule for disposition of those funds given the passage of time since those amounts were collected.

CONCLUSION

For the foregoing reasons, I respectfully recommend that defendants' motion for sanctions be denied in all respects.

This report and recommendation will be filed electronically. Any objections to this Report and Recommendation must be filed by September 25, 2018 and a courtesy copy sent to Judge Garaufis. Failure to file objections within the specified time waives the right to appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:    Brooklyn, New York
          September 11, 2018

                    _/s/_____
                    MARILYN D. GO
                    UNITED STATES MAGISTRATE JUDGE